Your Honor, Antmoor Bagot, District of Arizona. Your Honor, Section 1326 creates three separate and distinct offenses. These are the attempted reentry of a deported person. That is shown by his mental state, his intent, coupled with some significant act that he does to further that intent. That offense, of course, is complete when those two things are present. The second offense created is the entry itself. That's when he crosses the international border, however he does it, through holes in the fence, walking, however, whatever he does. That is the entry. The offense we're concerned with here is the third one, which is a continuing offense. It starts where the entry ends. In other words, when the entry is complete, there's no donut hole in the legislation. He still is subject to criminal prosecution. The only catch is, of course, he's got to be caught. He's got to be tagged and identified by immigration authorities. The allegation in this case is that the defendant, on November 6, 2008, was an alien. He entered, entered, and was found near Phoenix. Now, the government's proof of trial only proved half of that charge. It proved that he was found near Phoenix, but the entry, and the evidence is uncontroverted on this point, that he entered through Nogales, a border crossing somewhere through the desert, whatever he did, and the date of entry was not 2008. It was four years previous, 2004. We submit that in this case there's a failure of the proof, that what the government had to do to sustain this charge was to show both that he entered and that he was found. Now, when we use the word entered, there's a double meaning there. One is the crime of entry, namely offense number two that Congress created, and the second is the essential fact of the entry. In other words, his crossing of the line, which starts the continuing offense of found in. We submit that, number one, this is just a failure of proof, that the government does not have the authority to change the charge against the defendant, that the government only proved half the charge, and, therefore, that our motion under Rule 29 for acquittal for failure of proof should have been granted. Now, one of the things we have not seriously – But those are – counsel, I want to make sure I understand you. Those are independent – those are independent grounds for conviction, right? Yes. All three of those are independent grounds. Right. And the government initially charged what could have been two different violations of the same statute. Could have been. And then before the district court abandoned one of them. Well, I moved to dismiss for duplicity. Duplicity is two charges and one count. I want to make sure. What you're saying is to sustain the found charge, you also have to show the entry charge. That's an essential fact. You don't have to, but in this – Let's leave aside the charge of entry. You're saying that when you find – when you say found, you have to show an entry? You don't have to, because in most cases, entry is not known. The person comes in the middle of the night. There's no immigration officer there. He's here illegally by definition. Why isn't that enough just to show that you're found? Because in this case, the grand jury specifically charged this defendant with entering in Phoenix, November 6, 2008, no proof. Okay. That's something the grand jury did. Right. But so suppose that there's surplusage. Well, there's a rule on surplusage, which is Rule 7C-something, and it gives the defendant the right to petition or ask the court to dismiss surplusage. This is not surplusage because it is an essential fact that marks the parameters of this crime. In other words, it started back in 2004, but it wasn't charged that way. It ended in 2008 in his discovery. That are the essential facts, and the government makes big – He just said you don't have to have. Those aren't essential facts. He said all you have to show is that he was found. But that's essentially changing the charge because it's whiting out the words entered and. But the government essentially did that. It was known to the defendant on what basis the government was going to try the case. It was known to the defendant in the instructions what the crime was. So did the government very clearly articulate what its theory was, and that was the found theory? Yes, but that wasn't the charge. No, no, no, but doesn't the Ninth Circuit law recognize that you can cure duplicity, a duplicitous indictment, by dropping one of the theories? One of the counts, yes, but if there are two charges in one count, yes, it can be. But this was clarified in our pretrial motions that what the government is going on is found in, not charging two offenses in one count. That would have been duplicity, and if so, they could dismiss one, yes. But it was not – the trial judge ruled that this was charging a found-in offense. Rule 7 says that the indictment must charge the essential facts. It is not limited to elements. Facts are different from elements. In fact, in the case I cite, United States v. Resendez-Ponce, the Supreme Court specifically said the specifics of a charge, the date, the time, the place, these are more revealing and provide greater notice to the defendant than does just the parroting of the elements of the offense, which we all know in any event. So just repeating the statute doesn't do a whole lot of good. Well, you know, you've got 15 minutes to a lot of issues, so let's – I think we've explored that one. Let's go on to your next issue. Your Honor, the charge against the defendant is that he entered. My second argument, of course, is that the indictment does not allege that the entry was voluntary. Illegals can enter through Phoenix. They can enter through San Francisco. There are airplanes. They can come in INS custody. Are you talking now about whether this is a part of the found charge? I'm talking about the allegation that he entered near Phoenix. All right. For found. For found. Let's just talk about the charge that he was found in the United States on a certain date. Are you alleging or are you arguing that it has to be after voluntary entry? Yes. Okay. And what is the evidence that's necessary to show a voluntary entry? Well, if he is found far from a point of entry, that can be an inference. It doesn't even have to be alleged under the circuit's case law. But Phoenix is a point of entry, as is San Francisco. People come in airplanes all the time. They come in ICE custody. They've never been released, so they're technically not here until they arrive in Phoenix. If he had entered four years ago, would that not have been evidence that he was here voluntarily? Yes, and intended to stay here. That is our complaint, that the prosecutor used these unalleged facts, in fact, contradicting the indictment that he entered four years ago. Therefore, the jury could infer that he was intended to be. What is those facts? What evidence are those facts? Well, basically, the words out of his own mouth. He provided these facts. I'm trying to get down to the issue I wanted to ask you about. So the evidence against him to show that he entered voluntarily is his confession. The evidence against him that he entered voluntarily is that he had been here four years. Which was established by what? His own words to the deputy sheriff. Okay. So now your argument on the confession is that it was a violation of Miranda, right? Among other things, yes, sir. All right. Let's skip that for a moment. Why was that not harmless? Why was that not harmless? Because the – well, it was a raised issue, so the government has the burden. What other evidence other than the confession was there that he was here voluntarily? If he was here voluntarily, the government's changing the indictment that he entered four years ago. Evidence. Evidence. Just the length of the stay. The what? The length of the stay, four years. Which is established in what way other than the confession? No other way. You never know when somebody enters illegally. They don't check in when they cross the border illegally. They come through the desert. They come in the middle of the night, whenever. Did the government – what was the evidence that showed that he entered in 2004 in Nogales? Was that from his confession or was that from something else? His own confession, that's it. The government did present evidence that he had been deported from the United States prior. Previous to that, yes. Okay. So there was evidence that somebody had seen him at the border and had escorted him across the border and seen him back in Mexico. Yes. What evidence was it that he was seen in Mexico, right? I don't believe he was seen. He was deported to Mexico. In 2004. The year before – a month before he re-entered, according to him. Okay. All right. I think what I'm trying to ask to establish from you is we know he was in Mexico in 2004. Right. What evidence, other than his confession, is there that shows he came back to the United States before the day that they found him in jail? He was found in jail. No evidence. Okay. He's illegal. They're in the shadows. Pardon me? They're in the shadows. They're illegal. That's why he doesn't want to be found. No, no. I just want to know what evidence there is. There's no evidence. Okay. So your contention is the sole evidence that he entered or how he entered, voluntarily or otherwise, is his confession. Absolutely. Okay. That's it. And why do you say the confession is a violation of Miranda? Because it was clear he was in custody. He was being questioned by an immigration agent, not a full-time employee, but someone designated under 287G. The purpose of the interrogation was to find out his illegal status in the United States for two purposes, one for civil, possible deportation, and number two, to pass the information on to ICE for possible criminal prosecution. The interrogation is for a dual purpose. And that's why we say it was an eliciting and incriminating statement. Had this guy been Mirandized, had he been aware of his rights to remain silent, he might not have made this confession. There would be no evidence of when, where, or how he entered across the border. It would have made the government's job a little more difficult, which is what the right to silence clause means. Okay. Do you want to save the rest of your time for rebuttal? Yes, sir. Three minutes and 41 seconds. Thank you. May it please the Court. My name is Dominic Lanza. I'm an assistant United States attorney, and I represent the United States in this matter. Is there any evidence other than the confession? Yes, Your Honor. There are two. There's a number of pieces of evidence. Go ahead. I will concede that the only piece of direct evidence pertaining to the circumstances of the defendant's entry and whether it was voluntary was the confession that was elicited by Officer Nahara and then brought into evidence. But there were also a number of pieces of circumstantial evidence that also supported that. And, of course, circumstantial evidence can support a conviction just as direct evidence can. Those pieces of evidence, first and foremost, were the most powerful piece of circumstantial evidence was the location where the defendant was found. The evidence is clear in this case that the defendant was found in Phoenix by Phoenix Police Department when he was arrested on state charges. Time and again, this Court has held that, of course, proving the exact circumstances of a defendant's surreptitious entry in a found-in case is often difficult to do for the government because we have no evidence of how these people may have come in. That was the whole point. Mr. Baggett pointed out that Phoenix is a point of entry. It's not anywhere near a... The point of entry, I assume, would be the fact that Phoenix has got an international airport. This Court has held in Bajenis, Cardenas, Jimenez, Borja, and Parga-Rosas that where a defendant is found in a place that's not near the border, that in and of itself in a case where the defendant doesn't put on any affirmative evidence that they were somehow smuggled across the border by bandits or extradited here or some very unique circumstance that, as Judge Martone said, in the circumstances of this case, is off the charts in terms of believability, the mere fact of being found in a place that is not near the border in and of itself is sufficient to survive a sufficiency of the evidence challenge. Where was he found in Phoenix? The record doesn't reflect where specifically he was found in Phoenix, only that he was found in Phoenix by PPD and arrested on state charges and then booked into the Maricopa County facility. And the reason for this rule, it makes sense. It might be possible in a case where a defendant, at least in Arizona, is apprehended right near Yuma or right near Tucson. And legitimately, the defense might be, I did not know I was in the United States. I was wandering near an unmarked place in the desert. It transformed from Mexico to the United States. I didn't know I was here. This was not a voluntary act to reenter. Or that he was apprehended in the act of coming into the United States and transported to a jail. And here, the evidence, the only evidence is in the record that the jury heard was that the defendant was arrested by Phoenix Police Department and then brought to the Maricopa County jail. Again, I suppose it's possible that the PPD could have gone hundreds of miles away from Phoenix, gone down to the border and arrested somebody on a local offense. But that strains credulity. And there was no evidence to support that sort of atypical scenario occurred here. And I guess that's a good segue. Of course, where the defendant was found, in and of itself, in our view, supports sufficient evidence to survive a sufficiency challenge. But this is a... Was the jury told that he was apprehended in Phoenix? Not specifically, no. They were just told who apprehended him and that he was then booked into the Maricopa County jail. That he was apprehended by whom? I believe the record says he was apprehended by the Phoenix Police Department, but I'm not 100% certain. And the reason that the details about the apprehension, we didn't get into them, is we try to steer clear of that in these cases because it's prejudicial to the defendant to dump in a bunch of evidence about the state charges. Well, I mean, you might be commended for that, but I'm just trying to find out what was in the evidence. Okay. The evidence was that he was arrested and booked into the Maricopa County jail. It doesn't tell you whether he was arrested by immigration or the Phoenix Police or by whom? I believe it says Phoenix, but I'm not certain of that. And I can check it, but I don't know off the top of my head who it said was the arresting agency. I believe a reasonable inference that the court could credit the jury finding on a sufficiency evidence review is that when somebody is booked into the Maricopa County jail on state charges, the arresting agency is... Did they say he was booked on state charges? It just said he was an arrestee. And I guess that points to a second independent basis that there's circumstantial evidence showing that the entry was voluntary here. This is not a case where this was the defendant's first reentry into the United States following a deportation. In fact, we put in evidence in this case showing that the defendant had been deported on a number of occasions, and on each one of those occasions he had been given a very specific warning that was translated into Spanish that warned him in unequivocal and no uncertain terms that if he ever came back to the United States without securing permission, he faced very severe criminal penalties. And we would submit it's our position that when a defendant has been warned in no uncertain terms that when you've deported, you can't come back to this country without permission, and then they are found in the United States, again, it's theoretically possible that there was some crazy set of circumstances that led them being hailed into this country from Mexico involuntarily, but it's certainly reasonable for Rule 29 purposes for a jury to infer that they made a voluntary decision to come back. Assuming there's a Miranda violation, doesn't your position have to be that the admission, that the defendant's confession was harmless there and that this other evidence is sufficient? In our brief, we've provided three independent reasons why the defendant's Miranda challenge shouldn't provide reversal here. No, but what I'm focusing on. Yes, with respect to the harmless error ground, which is one of the three independent grounds. Yes, the evidence here was plainly sufficient under Ninth Circuit precedent, even if you exclude the admission. The mere fact that he was arrested and booked into the Maricopa County Jail, which is more than 100 miles away from the border, and there's no evidence that somehow this was a border seizure under Bajanis, Cardenas, Jimenez, Borja, and Pardo-Rojas, this Court is without hesitation held that that's enough to survive a sufficiency challenge. But does a sufficiency challenge necessarily answer the harmless error question? It would seem to me obvious that his confession carries far more weight than the circumstantial evidence. I think we need to step back. This was a case where there was basically no defense. We put on our case. The defense did not elicit any damage. When you have an insufficiency of the evidence, you don't. And so the question, I think, is for harmless error purposes, the Court steps back, and it's not simply a sufficiency analysis, but the Court weighs the evidence and looks at the record and says, on balance, if you excise this confession, what does the record look like? What would a reasonable jury have done in those circumstances? And here, there's no evidence that the defendant's entry in the United States was somehow involuntary. This was a routine case where he was booked in Phoenix. There's no evidence about a surreptitious entry or an extradition or bandits pulling him across the border. And this Court has held that it would have to be a very unique circumstance where there was actual evidence of those sort of things that might support a finding that the entry was involuntary. And there was none of that here. This was a case where we put on Officer Nahara. We put in all of the evidence from the A file showing his warnings and the fact that he had been deported a number of times, put on the fingerprint expert showing that all of the fingerprints on his documents were from the same defendant, and put on the officer from Laredo who had witnessed his deportation. This was an utterly routine case that there was no evidence that the jury could have somehow thought that it was an involuntary entry.  He had been deported three times, in 2004, 2003, and 2002. And we put those on for the specific purpose of showing that he had been warned so many times and deported so many times that when he's found here illegally for the fourth time, a jury, particularly in the evidence of any contrary evidence about an involuntary entry, would have basically no conclusion to reach other than this had to have been a voluntary entry. It's just common sense. And speaking more about the Miranda issue, unless the court has any further questions about how the evidence plays out, I think there's a question that we haven't talked about yet, which is a wholly separate ground for affirmance, and that is the clear waiver issues that are presented here. Judge Martone found as an independent basis for rejecting the Miranda challenge that the defendant had not timely raised the challenge, that we had made a proper disclosure under all the rules about disclosure, and therefore under the plain language of Rule 12, which is one of those rare rules which is unequivocal and says absolutely positively, suppression motions must be made before trial, that that provided an independent basis for rejecting the Miranda challenge. We've identified a number of them. And he went on to describe the merits of the Miranda. He did, and I think that Judge Martone did an admirable job of, after recognizing when the defense made this very unorthodox speaking objection, raising a Miranda objection in the middle of Officer Nahara's testimony, he could have simply said, this is untimely, I reject it as untimely, move on. And instead, he tried to make a factual record, because you never know what the appellate court is going to do with a waiver finding. But I wouldn't Including one of the things when you decide the merits, appellate courts sometimes say once the merits have been decided, we'll overlook the fact that the right procedure wasn't followed in raising it. And I would suggest that a longstanding rule of appellate procedure that this Court has consistently followed is declining to reach constitutional questions when it's unnecessary to do so. And here, I guess it bleeds into the merits now, and I'd be happy to address them. This question of whether Miranda warnings are required here, this Court That's a significant question, because in Phoenix, this is a regular practice, and there are lots of immigration cases like this. And whenever they come to the jails, as I understand it, they violate Miranda. Respectfully, you're the one who makes the conclusion, so I don't want to say that assumes the conclusion. That's why I think it's an important question, that if it doesn't violate Miranda and the sheriff's going to do this to everybody who's arrested, then we should know that and say that. On the merits If it does violate Miranda to arrest all these people and take their confessions and then deport them, then we should say that's fine. Then on the merits, I think that the most important principle to begin with when addressing this argument is to make clear that this Court, in a number of decisions dealing with the issue of asking questions about alienage to in-custody defendants and prisoners, has consistently declined to adopt a per se rule holding that Miranda warnings are always required before an in-custody alienage question is asked. A per se rule that's never required. Correct. Instead, this Court has engaged in a very multifaceted, fact-bound analysis in these cases, trying to figure out what the sweet spot is where it becomes required to administer Miranda warnings and when it doesn't. And I would submit that in reviewing these cases, Salgado, Chen, Mata-Obundez, the ECWA case, the key principle that is derived from these is that one of the important factors that this Court looks at is whether or not at the time the agent or the law enforcement officer asking the questions, whether they're an INS agent or a state officer, whether at the time they asked the question they had reason to suspect that there might be something amiss with the particular defendant's immigration status. And that is part and parcel of what the Miranda test is. Miranda warnings are not required in every custodial setting when questions are asked. It's only required when the questions are likely to elicit an incriminating response. And so in this Court's precedence, as we traced in our brief, one of the key factors is whether the person being questioned had been arrested on immigration-related charges at the time of the questioning. And in Chen, in a case in which this Court held that Miranda warnings were required, the defendant was arrested on immigration charges as part of a criminal alien smuggling investigation. And there, the subsequent questioning was deemed improper without Miranda warnings because for a variety of reasons, the agent had reason to believe that, well, if I ask something about alien, it's just going to be incriminating. The agent found out that the person was an illegal alien, right? In Chen. In the questioning. And after that, went on to find out whether he had been previously deported. Now, that didn't have any relationship to whether he was simply an illegal alien. That went on to establish and should be deported. That went on to establish a crime. Are you talking about in Chen? No, here. In this case. Part of the purpose of the questioning here is simply to get a full picture of what the defendant's immigration status is so that. Well, once you know that the person is here illegally, you know that he can be deported. And I think that the further question, not simply whether they're an alien, but also have they been previously deported, is important information for pure administrative purposes. Procedurally. For criminal purposes as well. Perhaps, but procedurally, when a defendant has not been previously deported, but they're an alien, you'd have to put them in proceedings, have an immigration judge hearing, and have a full procedural panoply of things that could happen before you could deport somebody. Whereas, if a person has been previously deported, you can simply administratively get what's known as a reinstatement order and quickly deport them. So these questions are not questions. The mere fact of asking about a prior deportation is not some insidious thing that only has criminal overtones. Maybe not only, but if you know that that's frequently a consequence, that people are tried regularly in Phoenix for this. And, in fact, this person is tried within ten days of this as a criminal prosecution initiated. I'm not so interested in this case. I'm saying what should the rule be, that when all these people are arrested in Phoenix and many are prosecuted, that we should allow, without a Miranda warning, the immigration officer to get them to confess to all the elements of a criminal offense? Well, I think that rule, that approach is absolutely supported by this court's precedents. And if you look at Salgado, Salgado was a case where an INS agent conducted in-custody interview of a defendant. And in that case, this court held and asked questions about alienage that were later used in a defendant. And this court held that, despite that, Miranda warnings were not required because, first, the defendant in Salgado had been arrested on state charges that had nothing to do with the defendant's immigration status. And, second, the interviewing officer in that case, the role of the interviewing officer was limited simply to placing a detainer on the defendant so that a different portion of the INS could do whatever they wanted to do with the defendant in that case, whether it was deport, criminally prosecute, whatever. And this court found those differences significant there. And just to talk a little bit more about Salgado, Salgado was a case where this court approved the non-Mirandized questioning, even though it was not a true booking interview. If one reads Salgado, in that case, the defendant went in to ---- Don't spend too much time, because we're a minute over already. And I'm sure you want to talk about Chen. And so ---- Scalia. Right. I'm talking about a general problem. I'd really like to have your idea of what the answer should be. And I think that we're ---- Indians are regularly brought in by the thousands and regularly prosecuted. And what should happen in the jails when they're questioned? Your position is it's all right with all of these people knowing that a lot of them can be prosecuted. I think it's an important fact that is undisputed on this record that Officer Nahara was asked repeatedly about during her testimony was, well, is this some set of questions that you only unveil on people coming through the jail who you think might be here, might not have status here based on how they look or their last name or anything like that? And she specifically said no. This is a set of booking questions that is asked consistently to every defendant who comes through here, irrespective of their race, last name, creed, color, how they look, whatever. This is a routine booking interview. So I would submit this case, bottom line, there are three factors why this questioning does not require Miranda warnings. First, because how the Maricopa County Sheriff's Office administers the program, it's asked of all defendants, and it's truly a booking interview that is done in all cases. Second, because here the interviewing agent, her only very limited circumscribed role is to simply make the decision whether to place a detainer on the defendant. In the detainer program, the purpose of it is, if ICE didn't have a detainer on a state prisoner, then once that person was done resolving their state charges, Maricopa County would just release them from prison and they'd be out on their own. The purpose of the detainer is simply that once their state charges are done, whatever happens with those state charges, the defendant then gets placed into federal custody so that ICE, a different portion of ICE with different officers, can make whatever decision they want to make with respect to whether this person is going to be deported, voluntarily removed, prosecuted, whatever. And so the way Maricopa County administers it, this initial interview is done by an officer who has zero involvement with what happens later on at ICE. It's a limited circumstance where the role is simply to decide whether to place a detainer. In Salgado, this court held that that was significant. And third, the charges that the defendant, at least in cases at Maricopa County Jail, where the charge leading to the arrest has nothing to do with the immigration status, that is a further reason why the officer asking this routine booking interview when everybody comes in has no reason to believe that this question is likely to elicit incriminating information. This officer is also an ICE officer or whatever. He's got some designation to act as an immigration officer. These are matters that are beyond the record, but I believe that I've done some, if the court wants to hear it, I've done some additional research on it. Under the immigration laws, under Section 287G, ICE has the ability to reach agreements with individual state and local law enforcement authorities to decide whether to delegate certain specified immigration-related enforcement functions to that state agency. And even though I believe under the law they would technically have the ability to authorize all possible immigration-related functions to state authorities, in fact, in each specific instance, ICE needs to come to a written contract, a memorandum of agreement, between that locality that delineates exactly what functions are being delegated to them. But these people in this Maricopa jail have been delegated immigration functions. That's correct. In Maricopa County. It might have some relevance to whether people in another jail who weren't immigration officials asked questions to find out, you know, anything generally. But an immigration delegated, with immigration delegated functions, you're certainly aware of the consequences of asking questions like this, that you elicit criminal activity, which then leads to prosecution. And I can't get over the fact that in Salgado, the officer who asked the challenged questions was not simply a state-delegated 287G officer, it was an actual INS agent. And there the court held that in-custody questioning by an actual INS agent about alienage does not require a Miranda warning. Well, there we said in Chen that it wasn't for that purpose. It was purely for an administrative purpose. And, in fact, it didn't lead to a prosecution until a year later. And that's not what they had in mind because they were questioning about her being a witness in some other case. I mean, you know, certainly there were cases related to this Chen, Salgado, the distinctions Chen drew. And I was just really trying to get your thoughts about what we ought to say about officers' arrests in Maricopa County, where the officers are immigration officers at the same time, and they're asking questions that could well lead and do lead to prosecutions, whether or not, I mean, it's not the end of the world if they have to give a Miranda warning, whether what the proper answer should be to when and whether they should give Miranda warnings when they're regularly eliciting information that leads to prosecutions. And I believe, to go back in summary, I believe we've identified three specific factual reasons here, that it's a true booking interview, that the officer has no reason, based on the underlying state charge, to suspect an immigration violation, and the fact that the interviewing agent has no role in the ultimate disposition of how the immigration charges are pursued. Those are three reasons why, even though Miranda warnings might be required under other factual circumstances, they're not here. Thank you. Your Honor, 1325 provides a misdemeanor criminal offense for reentry without inspection. Every person, every illegal, who even the most less guilty of illegals is making an incriminating statement on a response to interrogation in the county jail. It's a misdemeanor. We prosecute it, and they prosecute it in our district. It's called the Streamline Program. They prosecute 100 or so of those misdemeanors each day. These are people who have not been deported. They haven't got a criminal history. They just jumped the fence to get a job or to see their family or whatever. That is an incriminating statement, even without any background. We also point out that the prosecutor talked about no defense. Well, if Mr. Simoniego looked at this allegation and said, gee, they're charging me with entry in Phoenix in 2008, I didn't do it, that's a defense. He knew he entered in Nogales four years before. That's a possible defense. The prosecutor also mentioned that in many of these cases the proof is difficult. That's probably true, but in this case the proof was easy. They had all the information, and let me emphasize this is not a mistake or error of the grand jury. If you look at the criminal complaint or page 4 of my excerpt, which is the probable cause statement, the wrong information is swore to under oath by the INS agent who at that Mr. Quigley. He's the IEA immigration enforcement agent who swore out the probable cause statement. That's where the grand jury got the wrong information and therefore brought the wrong charge against him, which the government could not sustain by any proof at all. I'd be glad to answer any questions. Thank you very much. Two minutes left. Thank you both very much. The case just argued will be submitted. The court will stand in recess today.
judges: Selna, Reinhardt, Bybee